IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

NORMAN SIMPSON,

    Plaintiff,

v.

JAVAKA JOHNSON, MARQUETTE SISTRUNK, ANISHA MAJETTE, KORBIN TIPPETT, and WYLENE HUNTER,[1]

    Defendants.

CIVIL ACTION NO.: 6:22-cv-15

## REPORT AND RECOMMENDATION

Defendant Hunter filed a Motion for Summary Judgment. Doc. 61. Plaintiff filed a Response. Doc. 68. For the following reasons, I **RECOMMEND** the Court **DENY** Defendant Hunter's Motion for Summary Judgment.

### BACKGROUND

Plaintiff, proceeding pro se, brought this 42 U.S.C. § 1983 action, alleging violations of his constitutional rights while incarcerated at Georgia State Prison. Doc. 1. In his Complaint, Plaintiff alleges that Defendant Hunter and Sergeant Wallis escorted him from the visitation area of the K-2 dormitory for a psychiatric appointment on February 16, 2021. Id. at 6. Plaintiff also alleges he was in fear for his life because Sergeant Wallis had threatened to assault him, so Plaintiff "jumped" the handcuffs. Plaintiff then agreed to allow Defendant Hunter and Sergeant Willis to re-handcuff him. When Sergeant Wallis uncuffed one of Plaintiff's hands, Plaintiff pulled out a shank, stabbed Sergeant Wallis, and ran into the open area of the visitation room.

---

[1] The Court **DIRECTS** the Clerk of Court to update the docket and record of this case to reflect the correct spelling of Defendants' names, consistent with the caption of this Report and Recommendation.

Sergeant Wallis then deployed his taser, and Defendant Hunter called for back-up assistance. Id. Plaintiff states that after he was cuffed and shackled and lying on the floor, Defendant Hunter hit and kicked him several times.

Plaintiff contends he was then taken to an area of the visitation area where there are no wall-mounted security cameras. Id. at 7. Plaintiff alleges Defendant Johnson directed officers "to cut the cameras off now and beat [Plaintiff's] ass." Id. Plaintiff then states Defendant Johnson hit him in the face with a closed fist, while Defendants Sistrunk, Majette, and Tippett began punching him, causing Plaintiff to fall to the floor. Plaintiff contends Defendants Johnson, Sistrunk, Majette, and Tippett continued punching, stomping, and kicking Plaintiff and hit him with their radios and, at some point, Plaintiff lost consciousness. Id. Plaintiff was treated for bruising and swelling of his left eye, bruising of his right eye, multiple cuts to his torso and extremities, and an injury to his back. Id.

After conducting frivolity review of Plaintiff's Complaint, the Court permitted Plaintiff to proceed with Eighth Amendment claims for excessive use of force against Defendants Johnson, Sistrunk, Tippett, Majette, and Hunter.[2] Doc. 11. Defendant Hunter now moves for summary judgment because there is no genuine dispute of material fact on his Eighth Amendment claim,

---

[2]    Plaintiff filed his Complaint on February 22, 2022, and the Court ordered service of Plaintiff's Complaint on Defendants Hunter, Johnson, Sistrunk, Majette, and Tippett on May 10, 2022. Doc. 11. Defendant Hunter was to file her Answer on August 5, 2022, doc. 16, but did not do so until February 23, 2024. Doc. 40. It was at that time the Clerk of Court issued a Scheduling Notice. Doc. 41.

The United States Marshals Service had difficulty serving process on Defendants Johnson, Majette, Sistrunk, and Tippett. See Docs. 12, 13, 16, 18–25, 27, 33–37. The four Defendants were ultimately served, and they filed their Answers in March through July 2024. Docs. 44, 45, 47, 58. All dispositive motions were due in this case on or before the August 11, 2024. Defendants Johnson, Majette, Sistrunk, and Tippett did not file any dispositive motions. Thus, it appears Plaintiff's claims against these four Defendants are ready for trial and, if this recommendation is adopted, Plaintiff's claims against Defendant Hunter are also ready for trial.

such that she is entitled to judgment as a matter of law and that she is entitled to qualified immunity. Doc. 61. This Motion is fully briefed and ripe for review.

## UNDISPUTED MATERIAL FACTS

### I. The Parties' Submissions

Defendant Hunter submitted a Statement of Material Facts ("Defendant's SMF") in support of her Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1. Doc. 61-1. In her SMF, Defendant relies on: the Investigative Case Summary from the Georgia Department of Corrections Office of Professional Standards, doc. 61-3 at 2–8; witness statements, use-of-force reports, and supplements, id. at 9–16; a picture of the shank Plaintiff used against Sergeant Wallis and chain of custody documents, id. at 17–21; copies of Plaintiff's disciplinary report and criminal judgment, id. at 22–25; the transcript of Plaintiff's deposition, doc. 61-4; and "all other pleadings and evidence" in this case, doc. 61 at 1.

Although Plaintiff responded to Defendant's Motion for Summary Judgment, Plaintiff did not include a separate SMF. Doc. 68. Plaintiff does make some factual contentions in his Response, but Plaintiff fails to provide any citations to the record to support his position. Unsupported contentions and disputes must be disregarded for the purpose of summary judgment. See Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (stating plaintiff's "conclusory assertions . . ., in the absence of supporting evidence, are insufficient to withstand summary judgment"); see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections). Accordingly, the facts recited below represent the facts in the record with all reasonable inferences drawn in the light most favorable to Plaintiff, the non-moving party. See Peek-A-Boo

Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011). The undisputed material facts, set forth below, come almost entirely from Defendant Hunter's SMF.

## II. Undisputed Material Facts

On February 16, 2021, Plaintiff was an inmate at Georgia State Prison. Doc. 61-1 at 1 (citing Doc. 1). Defendant Hunter and Sergeant Wallis escorted Plaintiff to the visitation area of the prison for a psychiatric appointment. Sergeant Wallis checked to see if the psychiatrist was in the area and left Plaintiff with Defendant Hunter. Id. Once Sergeant Wallis left, Plaintiff "jumped his cuffs" so the cuffs would be in front of him rather than behind his back. Id. (quoting Doc. 61-4 at 4). Sergeant Wallis then returned and told Plaintiff the doctor was not in that day, so Plaintiff would need to have the handcuffs placed behind his back before returning to his cell.

When Sergeant Wallis unlocked one of the cuffs, Plaintiff grabbed a homemade weapon, or shank, he had hidden in his waistband and stabbed Sergeant Wallis repeatedly.[3] Id. at 2 (citing Doc. 1; Doc. 61-3 at 3–4, 17; Doc. 61-4 at 4–5). Defendant Hunter radioed for assistance immediately before assisting Sergeant Wallis by getting between him and Plaintiff. Defendant Hunter then hit Plaintiff "with her radio multiple times and kicked him multiple times to subdue

---

[3] In his Complaint—which was signed under penalty of perjury—Plaintiff stated, "I agreed to place the handcuffs behind my back so Sergeant Wallis uncuffed one of my hands and that's when I pulled out a shank and stabbed him . . . ." Doc. 1 at 6. In his deposition, Plaintiff testified under oath that he "pulled out a shank and stabbed [Sergeant Wallis]." Doc. 61-4 at 4–5. At other points in the deposition, Plaintiff vaguely suggested that Sergeant Wallis could have been "stabbed by someone else" and stated that he (Plaintiff) could not remember stabbing Wallis. Id. at 7–9, 14 ("He had to have been stabbed by some else, 'cause they didn't see me doing any of it."). But then, in his Response to Defendant Hunter's Motion for Summary Judgment, Plaintiff stated that he "commit[ed] an act of desperation (by assaulting Sgt. Wallis)." Doc. 68 at 2. Considering the record in its entirety, there is no genuine dispute as to whether Plaintiff stabbed Sergeant Wallis on February 16, 2021. Plaintiff admitted this fact under oath on more than one occasion and all other evidence supports that fact. Plaintiff's vague speculation "someone else" could have stabbed Sergeant Wallis and Plaintiff's purported inability to remember the event do not create a "genuine" dispute of that fact. Moreover, whether Plaintiff actually stabbed Sergeant Wallis is not material to resolution of Defendant Hunter's Motion.

him and free" Sergeant Wallis.  Id. (citing Doc. 61-3 at 15–16).  Sergeant Wallis was able to deploy his Taser, striking Plaintiff on the second attempt.

Plaintiff's deposition testimony—upon which Defendant Hunter relies—is inconsistent about the precise sequence of events after he stabbed Sergeant Wallis.  Initially, Plaintiff stated the Correctional Emergency Response Team ("CERT") officers arrived immediately after the stabbing, then he was hit a "few times" while lying on the floor, and then his hands were cuffed behind his back.  Doc. 61-4 at 5 ("After—after I was hit a few times, they put the handcuffs back behind my back." and "I was hit, handcuffed back behind my back, and drug out, and beaten on some more.").  Plaintiff initially expressed some uncertainty about who hit him during that portion of the events.  However, at another point in the deposition, Plaintiff states that CERT officers arrived, Plaintiff was then handcuffed, and then, after he was restrained, Defendant Hunter hit Plaintiff with her radio and kicked him multiple times.  Doc. 61-4 at 12–13 ("I was laying on the floor on my side, and they came and put the handcuffs behind my back–put it back behind my back.  [Defendant Hunter] came up to me and hit me in the head with the radio and kicked me a few times.").

It is, however, undisputed that CERT officers then entered the visitation area to help subdue Plaintiff.  Id. (citing Doc. 61-3 at 13–14; Doc. 61-4 at 5).  After the CERT officers arrived, Plaintiff was placed in handcuffs.  At some point after Plaintiff was handcuffed, Defendant Hunter left the visitation area and took Sergeant Wallis to the medical unit for treatment for his stab wounds.  Id. (citing Doc. 61-3 at 2).  Defendant Hunter had no further interaction with Plaintiff.[4]  Id. at 3.

---

4   As noted above, Plaintiff does not dispute any of the factual statements in Defendant Hunter's SMF with any citations to the record.  Plaintiff opposes Defendant Hunter's Motion, but it appears Plaintiff is merely arguing that Defendant Hunter can be liable for excessive force based on her use of

**DISCUSSION**

**I.   Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative, summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and she is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the non-moving party would have the burden of proof at trial, the

---

force that occurred in the visitation area. Although Plaintiff alleged in his Complaint that Defendant Hunter was involved in a later beating that occurred outside the visitation area (which I refer to as the third altercation later in this Report), he does not appear to argue that now. Indeed, during his deposition testimony, Plaintiff testified that he does not believe Defendant Hunter participated in the third altercation. Doc. 61-4 at 15. Additionally, Plaintiff's Response to Defendant Hunter's Motion confirms that Plaintiff's claim against Hunter is based on her use of force in the visitation area and not during the third altercation. See Doc. 68 at 3 ("Defendant Hunter has now filed for summary judgment on her part, so as to show that 'after' the initial assault in the visitation room, she did not 'further' assault inmate Simpson. The complaint is being made against each and every prison official that took part in the incident. Not who did more, or less . . . [.]").

moving party may discharge her burden by showing the record lacks evidence to support the non-moving party's case or the non-moving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).

Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. Peek-A-Boo Lounge, 630 F.3d at 1353. As the Eleventh Circuit Court of Appeals has explained, "The facts at the summary judgment stage are not necessarily the true, historical facts or what a jury may ultimately find. Instead, the facts at this stage are what a reasonable jury could find from the evidence . . . viewed in the light most favorable to the non-moving party." Johnson v. City of Miami Beach, No. 20-10834, 2021 WL 5414410, at *1 (11th Cir. Nov. 19, 2021).

**II.     Plaintiff's Eighth Amendment Excessive Use of Force Claim**

   **A.     Legal Standard**

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Subjectively, such "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously

and sadistically to cause harm.'" Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) (quoting Skritch v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002)); Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) ("The 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010))).

To analyze the subjective component, the Eleventh Circuit has "identified five factors to help evaluate whether force was applied maliciously or sadistically." Pearson, 665 F. App'x at 863; Burke, 653 F. App'x at 695. The factors are: (1) the need for the exercise of force; (2) the relationship between the need for force and the force applied; (3) the extent of injury the inmate suffered; (4) the extent of the threat to the safety of staff and other inmates; and (5) any efforts taken temper the severity of a forceful response. Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

**B.     Analysis**

The first portion of Defendant Hunter's Motion depends on one question: Is there a genuine dispute about whether Defendant Hunter struck Plaintiff *after* he was handcuffed and subdued by the CERT officers in the visitation area? I conclude the answer is "yes." Therefore, I recommend the Court deny this portion of Defendant Hunter's Motion.

According to Defendant Hunter, she was involved in a brief altercation with Plaintiff immediately after Sergeant Wallis was stabbed, then the CERT officers entered the area, the CERT officers subdued Plaintiff, and then Defendant Hunter immediately left the visitation area and escorted Sergeant Wallis to the medical area. Doc. 61-2 at 6–7 (citing Doc. 61-3 at 2). Defendant Hunter asserts the narrative reports of the responding officers, handheld video camera

8

footage, and the summary of surveillance video show that Defendant Hunter took Sergeant Wallis to the medical unit "immediately" after back-up arrived in the visitation area and before CERT officers subdued Plaintiff and Plaintiff's uncertain and contradictory testimony is insufficient to create a genuine factual dispute. Id. (citing Doc. 61-4 at 5, 12, 13).

Plaintiff, however, offers a different version of events. Plaintiff has stated numerous times, in his pleadings and in his deposition, that Defendant Hunter hit him with her radio three or four times and kicked him three or four times *after* he was subdued and handcuffed. Doc. 1 at 5; Doc. 61-3 at 4, 8; Doc. 61-4 at 5, 12, 13; Doc. 68 at 1, 3–4. In fact, Plaintiff testified that after he was subdued and handcuffed in the visitation area, Defendant Hunter "bent down and whispered to me, 'You didn't have to do that to that man like that,' and she hit me in my head with the radio and kicked me a few times." Doc. 61-4 at 12, 13.

On this record, there are at least three potential altercations. For convenience, I refer to these as the first, second, and third altercations. The first altercation occurred immediately after Sergeant Wallis was stabbed and before Plaintiff was subdued. During this first altercation, Defendant Hunter got between Wallis and Plaintiff, hit Plaintiff with her radio multiple times, and kicked Plaintiff multiple times in order to subdue Plaintiff and free Sergeant Wallis. Additionally, Sergeant Wallis was able to deploy his Taser, striking Plaintiff on the second attempt. The facts of the first altercation are undisputed.

After the first altercation, the CERT officers entered the visitation area and subdued and handcuffed Plaintiff. Then, Plaintiff contends Defendant Hunter hit him with her radio and kicked him multiple times.[5] Defendant Hunter disputes this allegation and states she

---

[5] To be sure, Plaintiff contends the CERT officers also struck him during this period of time, but this Report and Recommendation concerns only Plaintiff's allegations regarding Defendant Hunter. Therefore, I focus only on Defendant Hunter's alleged actions during the second altercation.

9

immediately left the visitation area and escorted Sergeant Wallis to medical. Thus, it is disputed whether Defendant Hunter was even involved in the second altercation.

After the second altercation, Plaintiff alleges the other Defendants removed him from the visitation area and beat him. This is the third alleged altercation. Plaintiff now appears to concede that Defendant Hunter was not involved in the third altercation. In other words, Plaintiff's claim against Defendant Hunter is based only on the first and second altercations and not the third altercation. It is unnecessary to address the third alleged altercation any further.

As to the first altercation, the facts are undisputed. Plaintiff stabbed Sergeant Wallis, then Defendant Hunter and Sergeant Wallis used force on Plaintiff to subdue Plaintiff and to prevent additional harm. It does not appear that Plaintiff's claim against Defendant Hunter is based on her actions during the first altercation. To the extent Plaintiff does mean to assert a claim against Defendant Hunter based on the first altercation, that claim plainly fails and Defendant Hunter would be entitled to judgment as a matter of law. The undisputed facts related to the first altercation show Defendant Hunter was urgently responding to a potential lethal attack on Sergeant Wallis and she used moderate force to subdue Plaintiff. Considering the five relevant factors, there is no plausible argument that Defendant Hunter "maliciously or sadistically" used force against Plaintiff during the first altercation. See Pearson, 665 F. App'x at 863.

Plaintiff's claim appears to be based on Defendant Hunter's actions during the second altercation. To reiterate, during the second altercation, Plaintiff claims that Defendant Hunter hit him with her radio and kicked him multiple times while he was subdued and handcuffed. Plaintiff made these allegations under oath during his deposition. It is well established that such conduct would constitute excessive force. See Jackson v. Catanzariti, Civil Action No.: 6:12-cv-

113, 2019 WL 4874809, at *25 (S.D. Ga. Oct. 2, 2019) ("The law of the Eleventh Circuit 'prohibit[s] the unjustified use of excessive force by a prison guard against an inmate' who is restrained and 'pose[s] no continuing threat." (quoting Davis v. Locke, 936 F.2d 1208, 1213 (11th Cir. 1991))). Thus, there is a genuine dispute about a material fact relating to Defendant Hunter's use of force against Plaintiff and whether said use of force was objectively and subjectively reasonable or excessive under the circumstances. Accordingly, Defendant Hunter is not entitled to summary judgment as to the second altercation.

Defendant Hunter makes two arguments that warrant additional consideration. First, Defendant Hunter points out that Plaintiff expressed some uncertainty during his deposition about who was involved in the immediate response to his assault of Sergeant Wallis and Plaintiff could only identify Defendant Hunter and Defendant Johnson. See Doc. 61-4 at 5, 12, 13. Nevertheless, Plaintiff has repeatedly stated, including in his interview that took place just two days after these altercations and in his Complaint that was filed a year after these events, that Defendant Hunter was involved in officers' immediate response to the stabbing and Defendant Hunter hit and kicked him several times after he was subdued and handcuffed. Doc. 61-3 at 4; Doc. 1 at 5; see also Doc. 68. Plaintiff also testified during his deposition he had already been tasered and was on the floor when back-up arrived at the visitation area, and Defendant Hunter "walked up from nowhere and hit me in the head with a radio a few times and then kicked me a few times for no reason." Doc. 61-4 at 12; id. at 13 ("I was laying on the floor on my side, and they came and put the handcuffs behind my back . . . . [Defendant Hunter] came up to me and hit me in my head with the radio and kicked me a few times."). Plaintiff did appear unsure of certain events or even to contradict himself during his deposition. But to find this uncertainty

11

equates to the lack of a genuine dispute about the second altercation would invade the province of the jury which, of course, is not the Court's role in resolving a summary judgment motion.

Second, Defendant Hunter argues that video evidence supports her Motion. This argument fails. Defendant relies on five videos, which appear to be from handheld cameras carried by prison guards. Doc. 61-3 at -132, -141, -142, -143, -162.[6] These videos provide no insight into Defendant Hunter's use of force (or lack thereof) during the second alleged altercation. All of these videos begin after Plaintiff was removed from the visitation area and after the second altercation is alleged to have occurred. The videos appear to depict Plaintiff's escort to the medical unit. Indeed, it is unclear if Defendant Hunter is depicted on any of the videos.

There is a reference to one other video in the record. Defendant Hunter submitted a summary of her interview with Special Agents Williamson and Rentz that took place three days after this incident. In that summary, it states Defendant Hunter "was shown the A unit lobby video and confirmed that she was walking with [Sergeant Wallis] out of the area." Doc. 61-3 at 6. But it does not appear that Defendant Hunter submitted the lobby video in support of her Motion.[7]

Ultimately, none of the video evidence undermines Plaintiff's version of the events. While Defendant Hunter—and others—may have asserted that she left the visitation area

---

[6] I have identified these videos using the last three digits appearing on these videos as part of Defendant Hunter's Exhibit C.

[7] Defendant Hunter identified a collection of materials as "Exhibit C" to her Motion. Exhibit C include numerous Bates numbered documents, video files, and audio files. Defendant Hunter states in her Motion that "narrative reports of responding officers, handheld video footage from the incident, and the summary of surveillance video" support her version of the events. Doc. 61-2 (citing to "Ex. C, Bates Audio-Video Files–Bates 000001-000049"). Hunter does not, however, point to any specific video, describe any particular video, or explain with any specificity how the audio and video files support her description of the events.

immediately after he was subdued, Plaintiff disagrees. This is a genuine dispute of material fact that cannot be resolved on summary judgment. Consequently, Defendant Hunter is not entitled to summary judgment in her favor.

### III.  Qualified Immunity

#### A.  Legal Standard

To receive qualified immunity, a government official "must first prove that [s]he was acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." Hardy v. Broward Cnty. Sheriff's Off., 238 F. App'x 435, 439 (11th Cir. 2007) (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)). Then, the burden shifts to the plaintiff to show the defendant is not entitled to qualified immunity. Id. Thus, the plaintiff must show: (1) whether the facts viewed in the light most favorable to plaintiff establish a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013); see also Mousa v. Bd. of Trustees of Univ. of Ala., No. 7:12-CV-3008, 2014 WL 1338110, at *1 (N.D. Ala. Mar. 31, 2014).

#### B.  Analysis

Defendant Hunter contends she is entitled to qualified immunity because Plaintiff cannot show that she did not act in an "objectively reasonable fashion under the circumstances." Doc. 61-2 at 7–8 (citing Ensley v. Soper, 142 F.3d 1402, 1402 (11th Cir. 1998)). Defendant Hunter has not carried her burden of proving she was performing acts within her discretionary authority when she used force against Plaintiff during the second altercation. Thus, Defendant Hunter is not entitled to summary judgment on the basis of qualified immunity.

Even if Defendant Hunter had carried her burden regarding the second altercation, however, she would not be entitled to summary judgment on a qualified immunity basis. As discussed in § II, a genuine dispute of material fact exists regarding Plaintiff's Eighth Amendment claim on the second altercation.[8] And, as this Court has observed on previous occasions, inmates have a clearly established constitutional right to be free from the use of excessive force. E.g., Jackson, 2019 WL 4874809, at *25 ("In short, '[i]t is excessive force for a jailer to continue using force against a prisoner who already has been subdued.'" (quoting Nasseri v. City of Athens, 373 F. App'x 15, 19 (11th Cir. 2010); and then quoting Skritch v. Thornton, 280 F.3d 1295 (11th Cir. 2002), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009) ("By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued . . . ."))). Thus, Defendant Hunter is not entitled to qualified immunity as to the second altercation.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Defendant Hunter's Motion for Summary Judgment.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v.

---

[8] As also discussed in § II, it does not appear Plaintiff's claims against Defendant Hunter arise from the first altercation. To the extent Plaintiff intended to assert a claim against Defendant Hunter based on the first altercation, he fails to create a genuine dispute as to any material fact relating to such a claim. Therefore, Defendant Hunter would be entitled to qualified immunity because Plaintiff cannot show a violation of a clearly established constitutional right related to the first altercation.

Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 3rd day of March, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA